UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH J. CECCARELLI, *et al.*,

                  Plaintiffs,

    -v-

MORGAN STANLEY PRIVATE BANK
NATIONAL ASSOCIATION, *et al.*,
                  Defendants.

24-CV-6863 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs Joseph J. Ceccarelli and Susan L. Ceccarelli ("the Ceccarellis") bring this action against Defendants Morgan Stanley Private Bank, National Association ("Morgan Stanley") and unidentified mortgage note purchasers, alleging mishandling of the Ceccarellis' mortgage in violation of the Federal Truth in Lending Act, 15 U.S.C. §§ 1640-41 ("TILA"), and material misrepresentations sounding in fraud in the underlying state court foreclosure proceedings.

Before the Court is the Ceccarellis' motion for a preliminary injunction, seeking to stay enforcement of the state court judgment of foreclosure, and Morgan Stanley's motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6).

For the reasons that follow, Morgan Stanley's motion to dismiss is granted and the Ceccarellis' motion for preliminary injunction is denied as moot.

## I.    Background

Unless otherwise noted, the facts are drawn from the Ceccarellis' amended complaint (ECF No. 8 ("AC")) and are presumed true for the purpose of resolving the motion to dismiss.

*See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 76 (2d Cir. 2015).

### 1.    The Ceccarellis' Mortgage

The Ceccarellis, a married couple, purchased the Manhattan condominium at issue in this case in 2000.  (AC ¶¶ 14, 27.)  To finance the purchase, the Ceccarellis mortgaged the condominium to Merrill Lynch Credit Corporation, qualifying for and obtaining "the then most competitive rates."  (*Id.* ¶ 32.)  Over the next fifteen years, their mortgage "was subsequently refinanced and consolidated with [the] most competitive financing."  (*Id.*)  At some point during that time, Morgan Stanley purchased the Ceccarellis' mortgage and note.  (*See id.* ¶¶ 33-34.)

In or around 2016, Mr. Ceccarelli experienced "medical challenges" which caused the Ceccarellis some financial hardship.  (*Id.* ¶ 62.)  Mr. Ceccarelli met with a Morgan Stanley "mortgage account executive" to discuss refinancing their mortgage to meet their current needs.  (*Id.* ¶¶ 62, 67-70.)  However, Morgan Stanley ultimately did not grant the Ceccarellis the re-financing they requested even though, the Ceccarellis allege, they "had already been pre-qualified pending final approval."  (*See id.* ¶¶ 71-72, 74.)

The Ceccarellis allege that, instead of agreeing to their re-financing request, in September 2016, Morgan Stanley sold the Ceccarellis' mortgage note to "third-party 'investors' in the [Residential mortgage-backed security ("RMBS")] private marketplace."  (*Id.* ¶¶ 74, 76.)  Despite speaking to a Morgan Stanley employee and an employee of Morgan Stanley's loan financer, the Ceccarellis were unable to identify the new owner of their mortgage.  (*Id.* ¶¶ 74-75, 79-81.)

The Ceccarellis further allege that since that September 2016 sale, Morgan Stanley and

the subsequent purchasers of its mortgage note[1] "have acted to bury the true identifies of RMBS

Note Purchaser Does in the chain of note title in several ways, including defaulting in notices for

discovery and inspection and court-directed document production." (*Id.* ¶ 148.)

## 2.    State Foreclosure Action

In January 2017, Morgan Stanley commenced a foreclosure action in New York Supreme

Court, New York County. (*Id.* ¶ 85.) The Court takes judicial notice of the electronic filings,

record on appeal, and opinions in that underlying action.[2]

According to the Ceccarellis' summary of that litigation, "[t]he gravamen of the [their]

defense of standing in state court [was] that [Morgan Stanley] was no longer the real

party-[in-]interest, as the 'sole, true and lawful owner' or the Ceccarelli Note and

Mortgage . . . at the time of the commencement of the foreclosure action in January 2017. (AC

¶ 87.) The New York Supreme Court rejected this argument in 2019, holding that "there is no

question that plaintiff [Morgan Stanley] has standing and that defendants fell behind on the

payments." *Mortg. Stanley Private Bank v. Ceccarelli*, No. 850018/2017, 2019 WL 1502940, at

*1 (N.Y. Sup. Ct. Mar. 29, 2019) ("*Ceccarelli I*").[3]

---

[1] The Ceccarellis do not identify the number of subsequent purchasers that they allege have purchased their mortgage note since September 2016. They state merely that the note "was transferred by Defendant [Morgan Stanley] one or several more times . . . ." (AC ¶ 154.)

[2] Though "[g]enerally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), courts ruling on a *res judicata* defense may take judicial notice of relevant court documents filed in previous cases, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . to establish the fact of such litigation and related filings.").

[3] The state court proceedings appear to have progressed with the incorrect captioned name for the plaintiffs as "Mortgage Stanley Private Bank" rather than "Morgan Stanley." However, the Ceccarellis admit that the plaintiffs in the underlying state court action are the same as the defendant now before the Court. (AC ¶ 85 ("Defendant MS commenced the

In 2021, the Supreme Court granted Morgan Stanley a judgment of foreclosure, stating:

> [The Ceccarellis'] claims of lack of standing, the existence of an equitable bar to judgment and a need for further discovery were rejected in the order of Justice Arlene Bluth dated March 29, 2019.  As such, those issues are law of the case and not reviewable by this court. . . .  In any event, were the court to address the arguments on the merits, it would find them without merit.

*Mortg. Stanley Private Bank v. Ceccarelli*, No. 850018/2017, 2021 WL 1696732, at *2 (N.Y.

Sup. Ct. Apr. 23, 2021) ("*Ceccarelli II*") (citations omitted).

And in 2022, the First Department affirmed the judgment of the Supreme Court, holding

that it "correctly granted [Morgan Stanley's] motion for summary judgment and denied [the

Ceccarellis'] request for discovery concerning [Morgan Stanley's] standing, as [the Ceccarellis]

failed to provide an evidentiary basis for their request."  *Mortg. Stanley Priv. Bank, Nat'l Ass'n*

*v. Ceccarelli*, 178 N.Y.S.3d 28, 29 (1st Dep't 2022) ("*Ceccarelli III*").  The First Department

continued:

> [The Ceccarellis] contend that statements in a letter from MS Home Loans and those made by [Morgan Stanley's] employees suggest that [Morgan Stanley] had assigned the note forming the basis for its foreclosure to third-party investors before it commenced the action.  However, those statements do not indicate that [Morgan Stanley] was not the holder of the note at the time the action was commenced and, thus, are irrelevant to [Morgan Stanley's] standing.  We have thus considered [the Ceccarellis'] remaining contentions and find them unavailing.

*Id.* at 30 (citations omitted).

### 3.    Present Action

The Ceccarellis commenced this action on September 11, 2024, seeking emergency

injunctive relief from an impending foreclosure sale.  (ECF No. 1.)  After a telephonic

conference two days later, during which Morgan Stanley's counsel in the underlying state action

---

underlying foreclosure action in New York State Supreme Court[] New York County by Summons and Complaint in January 2017.").

represented that the foreclosure sale had been canceled and not yet re-scheduled, the Court denied the Ceccarellis' request for emergency relief as moot and set a schedule for briefing on the Ceccarellis' motion for a preliminary injunction.  (ECF No. 7.)

The Ceccarellis filed their amended complaint on September 24, 2024 ("AC") and moved for a preliminary injunction on October 15, 2024 (ECF No. 18).  Morgan Stanley opposed the motion on October 31, 2024 (ECF No. 23), and the Ceccarellis replied in further support of their motion on December 12, 2024 (ECF No. 28).

Morgan Stanley moved to dismiss the Ceccarellis' amended complaint on October 23, 2024.  (ECF No. 20.)  The Ceccarellis opposed the motion on December 6, 2024 (ECF No. 26 ("Opp.")), and Morgan Stanley replied on December 12, 2024 (ECF No. 27).

## II.    Legal Standards

### A.    Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires dismissal of a claim for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it."  *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709 (2d Cir. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  The burden is on the plaintiff to establish by a preponderance of the evidence proper subject matter jurisdiction. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  "In a motion to dismiss [for lack of subject matter jurisdiction] pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).

### B.    Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). A plaintiff's "[l]egal conclusions," however, do not benefit from "the tenet that a court must accept as true all of the allegations contained in a complaint." *Iqbal*, 556 U.S. at 678.

The Ceccarellis are litigating their case *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). However, "the degree of solicitude may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). Mr. Ceccarelli has been a barred attorney in New York "for over 30 years" (AC ¶ 24), and, for part of that time, he owned his own law firm (*id.* ¶ 62). Because of Mr. Ceccarelli's extensive experience in the law, the Court does not afford him the same solicitude traditionally given to *pro se* litigants with no legal background.

## III.  Discussion

In their amended complaint, the Ceccarellis assert that because Morgan Stanley was not the owner of their note at the time the bank commenced the foreclosure action in state court, and because Morgan Stanley allegedly continued to provide misinformation about note ownership, the foreclosure judgment in the underlying action should be vacated and damages should be awarded under TILA. (AC ¶¶ 171-81.)

6

Morgan Stanley moves to dismiss the Ceccarellis' complaint, arguing that this Court lacks subject matter jurisdiction over the action, that the issues and claims raised in the Ceccarellis' amended complaint are barred from re-litigation by collateral estoppel and *res judicata*, and that the TILA claims are time-barred. The Court addresses each of those arguments and then turns to the remaining claims against the unidentified note holders.

### A.      Subject Matter Jurisdiction

Morgan Stanley first argues that this Court lacks subject matter jurisdiction to overturn the state court's judgment in the underlying action pursuant to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine, which stems from two so-named Supreme Court cases, effectuates "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d. Cir. 2005). The Second Circuit has articulated a four-factor test to determine whether the *Rooker-Feldman* doctrine applies to a federal action:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced . . . .

*Id.* (internal alterations and quotation marks omitted).

Here, regarding the state court's judgment of foreclosure, all requirements of this test are satisfied, and thus the *Rooker-Feldman* doctrine applies. First, the Ceccarellis acknowledge that they lost in state court on their motion for summary judgment (AC ¶ 93), and in the Supreme Court's ultimate granting of Morgan Stanley's foreclosure judgment (*id.* ¶ 119). Further, this loss was affirmed by the First Department. (AC ¶ 128.) Second, in the present case, the Ceccarellis complain of injuries caused by the foreclosure judgment handed down in state

court—they complain of harm from "the eviction of the Ceccarelli family from their only apartment residence they have known for the last 25 years." (*Id.* ¶ 10); *see Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) (per curiam). Third, the Ceccarellis ask this Court to reject the state court's foreclosure judgment. Their second demand for relief is the "[v]acating, setting aside and permanently staying enforcement of the improperly procured state Judgment by Defendant Bank as null and void *ab initio* to the date of the inception of the underlying foreclosure action in January 2017." (AC at 39.) What the Ceccarellis' demand "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrinck*, 773 F.3d at 427. And finally, this action was initiated years after the 2021 judgment of foreclosure and 2022 appellate affirmance of that judgment. (*See* ECF No. 1.)

The Ceccarellis argue that the *Rooker-Feldman* doctrine does not apply here because Morgan Stanley's claims in the underlying state action sounded in fraud. (Opp. at 17 n.4, 28.) The Ceccarellis maintain that Morgan Stanley "made material misrepresentations of operative fact to the lower state court and on appeal that it was the 'true, sole, and lawful' owner of Ceccarelli note at inception of the action, when it was not." (AC ¶ 174 (citation omitted).) However, the Second Circuit has rejected a nearly identical argument to the one made here by the Ceccarellis, holding that the federal district court lacked subject matter jurisdiction to review the state court's foreclosure judgment. In *Vossbrinck v. Accredited Home Lenders, Inc.*, as here, a litigant alleged that the party foreclosing on his home "was not the holder of [his] note and mortgage when the foreclosure action was initiated," and thus had "submit[ed] fraudulent title documents in the state action." 773 F.3d at 427. The Second Circuit held that, in "ask[ing] the federal court to grant him title to his property because the foreclosure judgment was obtained

fraudulently," the litigant was "asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose." *Id.* Restrained by the *Rooker-Feldman* doctrine, the Second Circuit held that the federal courts could not review state court's determination that the foreclosing party had standing. *Id.* The same is true here.

This Court thus lacks subject matter jurisdiction to review the Supreme Court's determination that Morgan Stanley had standing as the owner of the Ceccarellis' note or its ultimate foreclosure judgment.[4]

## B.    Collateral Estoppel

Even if the Court had subject matter jurisdiction to adjudicate the Ceccarellis' claim that Morgan Stanley lacked standing and perpetuated fraud in the underlying foreclosure action, the claims would be barred by collateral estoppel.[5] "Issue preclusion, also referred to as collateral estoppel, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment.'" *Cayuga Nation v. Tanner*, 6 F.4th

---

[4] Morgan Stanley also argues that the Court lacks subject matter jurisdiction to adjudicate the Ceccarellis' claim for damages under TILA. (ECF No. 20-3 ("Mem.") at 15.) However, the *Rooker-Feldman* doctrine does not bar a claim for money damages due to fraud in an underlying state foreclosure action. *See Vossbrinck*, 773 F.3d at 427. After all, "the adjudication [of such a claim for damages] does not require the federal court to sit in review of the state court judgment." *Id.* Thus, this Court has subject matter jurisdiction to adjudicate the Ceccarellis' TILA claim for statutory damages.

[5] Courts may dismiss a case under the doctrine of collateral estoppel rather than reaching subject matter jurisdiction without running afoul of Article III. *See Phoenix Light SF Limited v. Bank of N.Y. Mellon*, 66 F.4th 365, 370 ("Despite the ordinary rule that courts must address questions pertaining to constitutional jurisdiction first, the Supreme Court has supplied courts with 'leeway' to dismiss actions based on non-jurisdictional, non-merits grounds . . . ."). Though the Court has determined that it lacks subject matter jurisdiction to adjudicate the Ceccarellis' claim of fraud in the underlying state court action, it alternatively could dismiss this case on the grounds of collateral estoppel. The Court reaches both questions to dispel any further debate on this long-litigated matter.

361, 374 (2d Cir. 2021). Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must "accord state judgments the same preclusive effect those judgments would have in the courts of the rendering state." *Hoblock*, 422 F.3d at 93. Because the underlying action was litigated in New York state court, New York law governs this analysis.

The New York Court of Appeals has identified two requirements for collateral estoppel to apply: (1) "the identical issue necessarily must have been decided in the prior action and be decisive of the present action," and (2) "the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (N.Y. 1985). Both requirements have been satisfied by the Ceccarellis' litigation of this very issue in state court.

The Ceccarellis first alleged that Morgan Stanley did not own their mortgage note and thus lacked standing to foreclose in their 2018 opposition to Morgan Stanley's motion for summary judgment. (ECF No. 20-4 at 5 ("[T]he Plaintiff has neither the standing and/or cannot claim a cause of action because it was not the owner and holder of the mortgage and promissory note when this action was commenced.").) In granting Morgan Stanley's motion for summary judgment, the New York Supreme Court rejected the Ceccarellis' defense, holding:

> [The Ceccarellis] failed to raise an issue of fact as to why the Court should question the note attached to the complaint. There is no reason for discovery where plaintiff has established standing and defendants admit that they defaulted on the mortgage. Put simply, there is no question that plaintiff has standing and that defendants fell behind on the payments.

*Ceccarelli I*, 2019 WL 1502940, at *1. The Supreme Court again rejected this argument in its 2021 judgment for foreclosure, calling the Ceccarellis' allegations "without merit." *Ceccarelli II*, 2021 WL 1696732, at *1. And this holding was subsequently affirmed in 2022 by the First Department, which noted that the Ceccarellis had "failed to provide an evidentiary basis" for their allegation that Morgan Stanley's promissory note, produced to prove standing, was in some

way fraudulent.  *Ceccarelli III*, 178 N.Y.S.3d at 29.

After six years of litigation, the Ceccarellis have had a full opportunity to contest the ownership of their mortgage note at the time of foreclosure, and courts have repeatedly rejected their claims.  They are thus collaterally estopped from relitigating the same issue in this Court.

### C.    *Res Judicata*

Though the Ceccarellis' claims of fraud and lack of standing are barred by both the *Rooker-Feldman* doctrine and collateral estoppel, their TILA claim for money damages, which was not previously litigated in state court, remains.  The crux of the Ceccarellis' claim is that there has been an ongoing violation of the disclosure requirements in TILA, 15 U.S.C. § 1641(g), ever since Morgan Stanley allegedly sold the Ceccarellis' mortgage note, refused to notify the Ceccarellis of the new owner, and "acted to bury the true identities" of those subsequent owners. (Opp. at 28; AC ¶ 148.)  Morgan Stanley argues that the Ceccarellis' TILA claim is barred by the doctrine of *res judicata* because it could have been litigated in the state action.  (Mem. at 18.)

"[R]es judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Monahan v. N.Y.C. Dep't. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted).  A claim is precluded from subsequent litigation if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Id.* at 285.

The Ceccarellis do not contest that the state court action resulted in a final judgment on the merits or that it involved Morgan Stanley suing the Ceccarellis to obtain a judgment of foreclosure.  (*See* Opp. at 29.)  Thus, the only remaining question is whether they could have asserted the TILA claim in the state action.

New York[6] uses "the transactional analysis approach" in determining whether a claim could have been previously raised. *O'Brien v City of Syracuse*, 54 N.Y.2d 353, 357 (N.Y. 1981). The transactional approach is "[a] 'pragmatic' test," *Xiao Yang Chen v. Fischer*, 6 N.Y.3d 94, 100 (N.Y. 2005), and "turns on whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations or business understanding or usage," *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Mach. Corp.*, 110 F.4th 106, 114 (2d Cir. 2024) (quotation marks omitted). Ultimately, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *O'Brien*, 54 N.Y.2d at 357.

The Ceccarellis' TILA claim is based on the very same facts raised by the Ceccarellis' affirmative defense in the underlying state action in 2018. The Ceccarellis argue in their opposition to summary judgment that, in addition to Morgan Stanley lacking standing "because it was not the owner and holder of the mortgage and promissory note when the action was commenced," Morgan Stanley had "unclean hands" in its "unconscionable conduct" of misrepresenting that it did possess standing and refusing to notify the Ceccarellis of the current owner of their note. (ECF No. 20-4 at 5, 13.) These allegations of misconduct are the exact factual predicates of the Ceccarellis' current TILA claim that Morgan Stanley failed to properly notify the Ceccarellis of the 2016 sale of their mortgage. (AC ¶¶ 76, 145-48.) Thus, the TILA

---

[6] Like that of collateral estoppel, "[t]he law governing the doctrine of *res judicata* in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). Thus, the Court looks to New York state law to determine the proper *res judicata* test.

claim is but a "different remedy," arising out of the same foreclosure, that the Ceccarellis could have, and should have, raised in the state action. *See O'Brien*, 54 N.Y.2d at 357.

The Ceccarellis argue that because New York state law does not require any mandatory counterclaims, they were within their rights to wait and bring a TILA claim in federal court, seven years after the commencement of the state action. (Opp. at 29.) However, though the Ceccarellis are correct that "New York does not have a compulsory counterclaim rule," the New York Court of Appeals has also made it clear that "a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of N.Y.*, 68 N.Y.2d 456, 461 (N.Y. 1986). It would be inconsistent with the state court's holding that Morgan Stanley was the owner of the Ceccarellis' mortgage and note when it commenced the foreclosure action to entertain a TILA claim premised upon the opposite factual conclusion. *See Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018) (summary order) (rejecting the same permissive counterclaim argument when a mortgagor who lost in a state court foreclosure action brought a subsequent TILA claim in federal court).

The Ceccarellis' TILA claim is thus barred by *res judicata*.

### D.    TILA Timeliness

Even if the Ceccarellis' TILA claim were to be considered not sufficiently connected to the underlying state foreclosure action to be barred by *res judicata*, it is untimely. TILA provides for a one-year statute of limitations "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). The Ceccarellis allege that Morgan Stanley failed to provide them with notice, as required by TILA, within thirty days after the bank allegedly sold their mortgage note to a third-party. (AC ¶ 141.) However, according to the Ceccarellis' amended complaint, this

alleged violation occurred "in September 2016," which would have given them until September 2017 to file a timely TILA claim.  (*Id.*)  Even assuming that the Ceccarellis did not find out about this sale at that moment, and that equitable estoppel applied,[7] the Ceccarellis argued in their July 2018 state court briefing that Morgan Stanley "was not the owner and holder of the mortgage and promissory note when this action was commenced."  (ECF No. 20-4 at 5.)  Thus, at the very latest the Ceccarellis were on notice of this disclosure violation in July 2018, and thus would need to have filed this TILA claim by July 2019.  They are five years too late.

### E.    Claims Against Unidentified Note Holders

With all of the claims against Morgan Stanley dismissed, the only remaining defendants are the unidentified note holders who allegedly purchased the Ceccarellis' mortgage note from either Morgan Stanley in September 2016 or purchased the note from subsequent unidentified note holders thereafter.  However, because the Ceccarellis provide no specifics about what entities purchased their mortgage note from Morgan Stanley, nor any information about when the hypothetical subsequent purchases happened (or how many), they have produced "[t]hreadbare

---

[7] This assumption is unlikely to be warranted in any event.  The doctrine of equitable estoppel "requires proof that 'the defendant made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, that the plaintiff relied on the misrepresentation and that the reliance caused plaintiff to delay bringing timely action.'"  *Koral v. Saunders*, 36 F.4th 400, 410 (2d Cir. 2022) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (1st Dep't 2003)).  But the only concealment the Ceccarellis have alleged is that Morgan Stanley did not notify them of the new owner of their note.  And "in cases involving TILA, the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself is* necessary to equitably toll the running of the statute of limitations, because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified."  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (cleaned up).

recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. This kind of pleading falls short of the Federal Rule 12(b)(6) threshold.[8]

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and Plaintiffs' motion for preliminary injunction is DENIED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 18, 19, 20, 26, and 28, enter judgment of dismissal, and close this case.

SO ORDERED.

Dated: January 24, 2025
New York, New York

J. PAUL OETKEN
United States District Judge

---

[8] Because the subsequent note purchasers have not been identified and thus have not appeared in this action, they have not yet had the opportunity to move to dismiss the amended complaint. However, "[t]he Second Circuit has recognized that a district court has the 'ability *sua sponte* to dismiss a complaint' if the allegations 'lack[ ] a basis in law or fact.'" *Zappin v. Schorr*, No. 22-CV-2034, 2023 WL 2601578, at *12 (S.D.N.Y. Mar. 22, 2023), *aff'd sub nom. Zappin v. Cooper*, No. 23-CV-671, 2024 WL 3250475 (2d Cir. July 1, 2024) (summary order) (quoting *Muka v. Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009) (summary order)). The Court exercises that discretion here, where virtually no facts have been alleged to support any kind of claim against the alleged remaining unidentified, unnumbered defendants.